UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA STOCK, LLC,<br><br>*Plaintiff,*<br><br>- v -<br><br>HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY and R.R. DONNELLEY & SONS COMPANY,<br><br>*Defendants*. | Hon. Timothy M. Burgess<br><br>3:09-CV-00061-TMB |

## DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS CLAIMS BASED ON UNREGISTERED COPYRIGHTS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendants Houghton Mifflin Harcourt Publishing Company ("HMH") and R.R. Donnelley & Sons Company (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(1), respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss Claims Based on Unregistered Copyrights for Lack of Subject Matter Jurisdiction.

## INTRODUCTION

The Complaint herein, dated March 26, 2009, alleges two claims for copyright infringement, one against each Defendant. Within those claims, Plaintiff Alaska Stock, LLC, a stock photography agency, alleges 83 separate infringements of licenses to publish copyrighted photographs. (Ex. A to Compl.) Specifically, Plaintiff alleges that it issued 83 licenses to HMH, that those licenses contained quantitative limits, and that Defendants exceeded those quantitative limits. (*Id.*; Compl. ¶ 11.)

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al  Case No. 3:09-cv-00061-TMB
Page 1 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 1 of 17

In order for a court to have subject matter jurisdiction over copyright infringement claims, the copyrights at issue must be properly registered with the Copyright Office. 17 U.S.C. § 411(a). A plaintiff has the initial burden of establishing subject matter jurisdiction with proof that the copyrights at issue are validly registered with the United States Copyright Office. *See Invision Media Servs. v. Glen J. Lerner, P.C.*, 175 Fed. Appx. 904, 907 (9th Cir. 2006); *Berry v. Penguin Group (USA), Inc.*, 448 F. Supp. 2d 1202, 1202–03 (W.D. Wash. 2006).[1] Here, Alaska Stock has tried to carry its burden by alleging that all of the copyrights at issue are covered by one of 20 copyright registration numbers. (Ex. A to Compl.) As Alaska Stock did not attach the actual registration certificates to its Complaint, Defendants have obtained the twenty registrations referenced by Plaintiff from the Copyright Office. (Declaration of Jason R. Braswell, dated May 22, 2009 ("Braswell Decl."), Exs. A–T.)[2]

Upon investigation of the registration certificates cited in Plaintiff's Complaint, Defendants discovered that there is no subject matter jurisdiction for 52 of the 83 alleged

---

[1] On March 2, 2009, the Supreme Court granted certiorari on the question of whether § 411(a) limits a court's jurisdiction. *Reed Elsevier, Inc. v. Muchnick*, 129 S. Ct. 1523 (2009). That case will not likely be decided for some time, and the law of this Circuit is clear. And, regardless of the Supreme Court's ultimate decision on whether § 411(a) is properly considered jurisdictional, the registration requirement would still be controlling and a claim without a valid registration must in any event be dismissed once the issue is raised.

[2] "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). Copyright registrations can also be considered on a Rule 12(b)(6) motion to dismiss. *See Rubke v. Capitol Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1130 (N.D. Cal. 2006) ("If a plaintiff fails to attach to the complaint the documents on which it is based, defendant may attach to a Rule 12(b)(6) motion the documents referred to in the complaint to show that they do not support plaintiff's claim. In addition, whether requested or not, the court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.") (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001)).

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al        Case No. 3:09-cv-00061-TMB
                                                                   Page 2 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 2 of 17

infringement claims by Alaska Stock because the registrations listed for those 52 alleged infringements are not valid registrations of the works at issue. None of the registrations for the photographs referenced in those 52 claims identify the artists who allegedly assigned their copyrights to Alaska Stock (Compl. ¶ 10) as either copyright claimants or authors. (Ex. U.)[3] Section 409 of the Copyright Act mandates that all copyright registration applications include the names of the claimant and the author, as well as the title. 17 U.S.C. § 409(1), (2), (6). Thus, Alaska Stock cannot rely on these registrations to establish subject-matter jurisdiction, and the 52 claims must be dismissed.

Moreover, the Copyright Office's apparent practice of allowing a registration of a collective work to cover self-contained works for which the copyright claimant is the same without requiring the claimant to list the author and title for each such embodied work conflicts with the controlling statute requiring such information and warrants no deference.

It appears that in this case, Alaska Stock, a photography stock house, filed various registrations for collections of photographs, sometimes in the form of a CD-ROM (*e.g.*, Ex. A), other times in the form of a website or other electronic database (*e.g.*, Ex. D). *See* 37 C.F.R. § 202.3(b)(5). The objective apparently was not simply to register the catalog or database as a collective whole, but rather to make that single registration apply to each of the possibly thousands of individual photographs contained within the collection so that the authors would not have to register any works themselves. (Ex. V ¶¶ 3, 7, 8.)

Materials provided by Alaska Stock's counsel in a parallel lawsuit, *Bean v. McDougal Littell*, No. 07 cv 8063 (D. Ariz.) ("*Bean*"), indicate that the improper registration process that

---

[3] Unless otherwise noted, all of the exhibits cited herein are attached to the Braswell Declaration.

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al            Case No. 3:09-cv-00061-TMB
Page 3 of 17
Case 3:09-cv-00061-HRH    Document 24    Filed 05/26/09    Page 3 of 17

Alaska Stock followed has its genesis in the 1990s when representatives of a stock photography trade association met with representatives of the Copyright Office to discuss applying registration practices for stock photo databases. (*See infra* I.B; Exs. V–Y.) Specifically, the stock houses proposed registering their entire catalogs (and subsequent databases) of possibly thousands of unrelated photographs taken by hundreds of unrelated photographers under a single copyright registration. (*Id.*)

To accomplish this, the stock houses proposed to obtain temporary copyright transfers "solely for the purpose of copyright registration" from the photographers. (Ex. V ¶ 4.) After completing the single registration, the stock houses would then assign the copyrights back to the photographers. (*Id.*)[4] The purpose was to allow photographers to avoid the cost and burden of registering their own works, even under the relatively inexpensive registration procedures available under the Copyright Office regulations that allow photographers to register collections of unpublished photographs or photographs published within a year. *See* 37 C.F.R. § 202.3(b)(4), (10); Ex. AA.

After meeting with the Copyright Office, the trade association advised its members to list only three photographers (apparently chosen at random) on their registration applications, no

---

[4] In *Bean*, the parties litigated whether this temporary transfer of copyright "solely for the purpose of copyright registration" was sufficient to meet the requirements of copyright registration. The court in that case determined on the limited available facts specific to Bean that the transfer was adequate. *Bean v. McDougal Littell*, No. 07-8063-PCT-JAT, 2008 WL 2896950 (D. Ariz. July 28, 2008). HMH believes that this issue was wrongly decided and it intends to challenge any such alleged transfer in this case, if the transfer exhibits similar flaws. However, Alaska Stock has not in its Complaint offered any documentation reflecting transfers between Alaska Stock and the photographers, nor has it alleged the terms of a transfer other than the transfer that was made for the purpose of letting Alaska Stock prosecute the photographers' alleged claims (Compl. ¶ 10). Thus, HMH cannot currently evaluate whether the photographers properly transferred the copyright to the copyright claimant Alaska Stock or whether Alaska Stock properly transferred the copyright rights back to the photographers. If no such transfers occurred, then Alaska Stock lacks standing for that reason to pursue the claims it asserts herein.

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al                    Case No. 3:09-cv-00061-TMB
                                                                   Page 4 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 4 of 17

matter how many photographers actually authored the photographs included in these massive aggregations of photographs. As support for this procedure, the association apparently relied on the private discussion with the Copyright Office, and later on a 2002 letter from Nanette Petruzzelli, Chief of the Examining Division. (Ex. X.) In that letter, Ms. Petruzzelli referred to language in an internal office manual written in 1984 and a Circular discussing registration procedures for serial publications, *e.g.*, newspapers, that indicated that the Copyright Office occasionally permits claimants to file registrations that do not list every author of a multi-author work, although the Office prefers the inclusion of all authors names on continuation sheets. (*Id.* at 2.) Ms. Petruzzelli separately stated that where the individual authors are listed, the Office interprets a claim to extend to individual photographic authorship. (*Id.* at 1–2.)

Defendants do not dispute that there is no need to list every author of every work included in a compilation for purposes of obtaining registration of the *compilation* itself—that is, for the copyright in the selection, coordination and arrangement of the compilation—but the registration cannot be said to cover individual works contained within the registration unless they are also listed by title and author. Section 409 of the Copyright Act requires the registration to include the title and author of the works so that each registered work can be properly identified on the public record. In the registrations at issue here, neither the authors nor the titles of the works are listed, nor are the works necessarily even included in the deposit copies, as the deposit regulations require only portions of the database to be deposited. *See* 37 C.F.R. § 202.20(c)(2)(vii), (viii).

The requirements of 17 U.S.C. § 409 are vital to the creation and maintenance of an accurate and searchable record of copyright that interested parties—including commercial interests and litigants—can use to ascertain whether a work has been registered, who created it,

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al　　　　　　　　　　　　　　Case No. 3:09-cv-00061-TMB
Page 5 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 5 of 17

and who controls it. It makes a mockery of the registration requirement in § 411 of the Act to allow a registration that fails to identify the work at issue, and thus fails to meet the statutory requirement.

## ARGUMENT[5]

I. **THIS COURT HAS NO JURISDICTION OVER CLAIMS RELATED TO 52 OF THE ALLEGED INFRINGEMENTS BECAUSE THE REGISTRATIONS PLAINTIFF RELIES ON CANNOT UNDER THE CONTROLLING STATUTE, 17 U.S.C. § 409, SERVE AS VALID REGISTRATIONS OF THE COPYRIGHTS AT ISSUE**

A. **The Registrations Alleged In The Complaint For 52 Of The Alleged Infringements Are Invalid On Their Face**

The Copyright Act at 17 U.S.C. § 411(a) mandates that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." In this Circuit, the registration requirement of §411(a) is jurisdictional. *Invision Media Servs. v. Glen J. Lerner, P.C.*, 175 Fed. Appx. 904, 907 (9th Cir. 2006); *Berry v. Penguin Group (USA), Inc.*, 448 F. Supp. 2d 1202, 1202–03 (W.D. Wash. 2006) A copyright plaintiff must satisfy the initial burden of establishing jurisdiction with evidence of proper registration, usually in the form of a registration certificate. *See Bean v. McDougal Littell*, No. 07-8063-PCT-JAT, 2008 WL 2896950, at *5 (D. Ariz. July 28, 2008). The Copyright Act also mandates that every registration application must identify, *inter alia,* the claimant, the author or authors of the work, and the title. 17 U.S.C. § 409(1), (2), (6).

---

[5] Defendants have made arguments similar to the arguments made here in a similar case involving a different plaintiff in the Southern District of New York. *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 09-CV-2669 (Preska, J.). The motion to dismiss based on these arguments is currently pending.

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al                                             Case No. 3:09-cv-00061-TMB
Page 6 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 6 of 17

Here, Plaintiff has not attached any certificates of registration to its Complaint. Instead, it provides a chart that alleges that each of the 83 alleged infringements involve photographs whose copyrights fall under one of 20 registration numbers. (*See* Ex. A to Compl.) A review of the registrations for the photographs at issue in these 83 alleged infringements, available to the public via the Copyright Office's website, reveals that the registrations for 52 of the alleged infringements fail to identify the respective photographer identified in Exhibit A to the Complaint as either a claimant or an author of any works purportedly covered by those registrations. (Exs. A–T.) The identity of each claimant or author named in the 20 registrations is summarized in Ex. U, which also details whether the purported registrations for the 83 alleged infringements identify the photographer of the various photographs at issue.

Plaintiff cannot meet its burden by only referring to registrations that exhibit no connection to the photographers who purportedly owned the copyrights before transferring them to Alaska Stock. *See Kenbrooke Fabrics Inc. v. Soho Fashions Inc.*, 13 U.S.P.Q.2d (BNA) 1472, 1476 (S.D.N.Y. 1989); *see also* 5 William F. Patry, *Patry On Copyright* § 17:111 (2007) ("Where the assignee is not listed [on the registration certificate], no prima facie status is accorded to the assignee's purported ownership, which must be proved up independently."). More significantly, registrations secured in the manner these registration were secured—naming only 3 random authors out of a number of others (some registrations identify how many other authors there are (*e.g.*, Ex. C ("103 others"); others do not (*e.g.*, Ex. A))—fail to comply with the clearly enumerated registration requirements of the Copyright Act. 17 U.S.C. § 409. For that reason alone, the Complaint must be dismissed. Alaska Stock, of course, is free to secure valid registrations and then seek to pursue its claims.

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al                                      Case No. 3:09-cv-00061-TMB
Page 7 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 7 of 17

### B. The Improper Registration Procedures Followed Here Were The Result Of Private Discussions Between The Copyright Office And The Representatives Of Certain Stock Photo Agencies

Eighteen of the 20 registrations Plaintiff cites in its Complaint were each issued to Alaska Stock as the "Copyright Claimant." (Exs. A–K, M, N, P-T.)[6] For each of those 18 registrations, the "Authorship on Application" lists Alaska Stock and three individuals. (*Id.*) For 52 of the 83 infringements Plaintiff has alleged, the individuals listed on the registrations are not the artists purportedly covered by the registrations according to Exhibit A to the Complaint. There is no identifying information in any of the 20 registrations that Plaintiff has cited that could be used to connect the purported registrations to the photographers identified in those 52 entries in Exhibit A to the Complaint.

The documents Alaska Stock's counsel produced in support of the registrations challenged on other grounds in *Bean*, establish that the interpretation that provided the apparent basis for this registration procedure exceeded the bounds of the Copyright Office's statutory authority—on the assumption that the Copyright Office in fact advised that there was no need to list all of the authors and yet have the registrations for the catalogs or databases cover each individual photograph.[7] According to the affidavit of Nancy Wolff, the lawyer for a trade association of certain stock houses, in 1995, Ms. Wolff and other representatives of the trade association met with staff members of the United States Copyright Office. (Ex. V ¶ 2.) At that meeting, Ms. Wolff and her colleagues outlined a mass registration procedure that would rely on a "temporary transfer of copyright ownership from the photographers to their stock agency" (*id.*

---

[6] Two of the registrations, Exhibits L and O, do not reference photographs at all and appear to have been erroneously cited by Plaintiff.

[7] In addition, as noted, there would still have to have been proper assignment of rights to the claimant.

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al       Case No. 3:09-cv-00061-TMB
Page 8 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 8 of 17

¶ 3), "solely for the purpose of copyright registration." (*Id.* ¶ 4.) The trade association posited that this limited, temporary transfer would then enable the stock houses to file a single registration as the copyright claimant for unlimited numbers of unrelated photographs authored by many unrelated photographers.

Once that single registration was secured, the stock house would then assign the copyrights back to the photographers and, as the trade association argued, both the collection (assuming the requisite originality of selection or arrangement to constitute a copyrightable collective work), and each individual photograph would be considered registered. (*See id.* ¶¶ 4, 9.) Ms. Wolff also instructed the trade association's members to "[l]ist the names of three individual photographers whose work is in the catalog. . . . It is not important which three photographers are named." (Ex. W at 4.)

In 2002, Ms. Wolff once again approached the Copyright Office about the registration practices of her clients. (Ex. V ¶ 6.) In return, Ms. Wolff received a letter from Ms. Petruzzelli (Ex. X) which outlined the latter's understanding of the "pattern" that stock house registrations "generally follow" and provided the Copyright Office's interpretation of that practice:

> The examiner interprets such information to indicate that the claim, or authorship, to which the registration extends consists of the compilation (selection, coordination or arrangement) of photographs and, perhaps, new copyrightable text authorship. Where individuals are listed at space 2a as additional authors, the Office considers the claim to extend also to the photographs themselves because, assuming that the claimant (owner of copyright) listed at space 4 is the author of the compilation (usually the stock photo agency), an acceptable transfer statement is also provided in space 4 of the form VA. *Thus, the Office interprets the claim to extend to the individual photographic authorship for which the names indicated as space 2b of the form VA are the responsible authors.*

(*Id.* at 1–2 (emphasis added).) Thus, Ms. Petruzzelli indicated that the Copyright Office interpreted the claims to extend to "individual photographic authorship" *only* for those photographers identified by name in the application. (*Id.*)

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al    Case No. 3:09-cv-00061-TMB
Page 9 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 9 of 17

Later in the same letter, however, Ms. Petruzzelli appeared to contradict the limited view expressed above—that the registration extends to individual works only for those photographers named in the application—when she referred to two Copyright Office guidelines that contemplated naming only three authors when a large number of authors contribute to a single work. (Ex. X at 2.) The first source Ms. Petruzzelli cited is the *Compendium of Copyright Office Practices, Compendium II* (1984). The Copyright Office identifies this now twenty-five year old document as a "manual, intended primarily for Copyright Office staff." *See* http://www.copyright.gov/compendium/ (the complete *Compendium II*, including this section, is not available on the Copyright Office web site—only two updates to unrelated sections are available). According to Ms. Petruzzelli, this internal manual stated that the Copyright Office preferred that a registration list all contributing authors, but that listing three authors and a reference to unnamed "others" was considered acceptable in some instances. (Ex. X at 2.) The second source Ms. Petruzzelli cited was *Circular 62, Serials* (*see* Ex. Z), a 2000 Circular that discussed registration procedures for serial works. (Ex. X at 2.)

While seemingly contradictory, these copyright staff statements can be reconciled as follows: not all authors are required to be listed for purposes of obtaining registration of the *database as a compilation*, but in order for the effect of the registration to extend to the individual photographs embodied in the database, the authors must be listed in space 2a of the application.

Indeed, Ms. Petruzzelli did not alter her earlier statement in her letter that the Copyright Office interpreted the registrations as extending only to named authors, nor did Ms. Petruzzelli state that the procedures developed for serial works were necessarily applicable to the stock photo agency catalogs or databases. *Circular 62* states that "[t]he classification 'serial' includes

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al   Case No. 3:09-cv-00061-TMB
Page 10 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 10 of 17

periodicals, newspapers, magazines, bulletins, newsletters, annuals, journals, proceedings of societies, and other similar works." (Ex. Z at 1.)

Moreover, neither the internal manual nor *Circular 62's* discussion of transferred rights appears to contemplate a temporary transfer solely for registration purposes. (*Id.* at 3: "When a serial issue includes independently authored contributions in which all rights have been transferred in writing to the claimant of the entire serial issue, it is not necessary to include the names of the contributors.") Thus, it is not entirely clear what the Copyright Office's position was, or is today, in regards to these registrations. But, it is clear that Alaska Stock believes it can rely on these registrations to provide a basis for bringing an action for infringement of individual photographs that were never identified by author or title in any copyright registration.

> **C.** **The Privately Discussed Registration Process Plaintiff Relies On Deserves No Deference And Directly Contradicts The Clear Terms Of The Controlling Statute**

The informal Copyright Office interpretation at issue here—if it could even be considered an interpretation since there is no record of a clear statement unequivocally accepting Alaska Stock's apparent view of the registrations—is not due the level of deference accorded official agency actions taken within the parameters of the agency's Congressional mandate. *See United States v. Mead Corp.*, 533 U.S. 218, 227–8 (2001); *see also Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). The interpretation here was the result of an informal, non-public discussion between a select group of industry insiders and representatives of the Copyright Office. (Exs. V, X.) Accordingly, it is only due deference "proportionate to its 'power to persuade.'" *Mead Corp.*, 533 U.S. at 235 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see also Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 157 (1991) ("some weight" is due to informal interpretations though not "the same deference as norms that derive from the exercise of . . . delegated lawmaking powers").

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al　　　　　　　　　　　　Case No. 3:09-cv-00061-TMB
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 11 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 11 of 17

Here, there are only the statements and procedures outlined by Ms. Wolff to the members of the trade association, and a short letter from Ms. Pertuzzelli that never directly addresses whether the works of unnamed individual photographers can be registered in this manner. Accordingly, there is no record here that could persuade the Court that the interpretation reflects a reasoned and appropriate exercise of the Copyright Office's mandate. Moreover, even if a clear statement of the Copyright Office's position did exist, and even if it supported Plaintiff's apparent view, it would still be due no deference because granting registration of unnamed works of unnamed photographers directly conflicts with the clear terms of the statute. "The [Copyright Office's] interpretation cannot trump the plain language of the governing statute." *See Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F. Supp. 2d 655, 662 (M.D. Pa. 2005) (finding Copyright Office's interpretation of "useful articles" *vis a vis* clothing on dolls conflicted with the plain meaning of the statutory definition of "useful articles"); *see also Christensen v. Harris County*, 529 U.S. 576, 588 (2000) (no deference owed to agency actions that conflict with the governing statute).

The statute in 17 U.S.C. § 409(a)(2) requires the name and nationality or domicile of the "author *or authors*" of the work that is being registered. Similarly, 17 U.S.C. § 409(a)(6) requires the title of the work being registered. Nothing in the comments or the legislative history indicates that these requirements can be side-stepped or waived by the Copyright Office. To the contrary, the legislative history indicates that the registration requirements were chosen, *inter alia,* in order to provide an accurate public record: "the various clauses of section 409, which specify the information to be included in an application for copyright registration, are intended to give the Register of Copyrights authority to elicit all of the information needed to examine the application *and to make a meaningful record of registration*." H.R. Rep. No. 94-1476, at 155–56

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al    Case No. 3:09-cv-00061-TMB
Page 12 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 12 of 17

(1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5771-72 (emphasis added). Absent these vital pieces of information, there is no record at all of the registration. A party, *e.g.*, a business planning to use a work, or a defendant charged with infringing a work, cannot search the Copyright Office's records and determine who actually controls a work, or indeed, whether an individual has ever registered a copyright. The procedure employed here serves no purpose other than to promote mass registration of works in a single application, depriving the Copyright Office of the very modest but important fees it charges for group registrations and undermining one of the very purposes of copyright registration.

> **D.      The Registration Procedure Relied On By Plaintiff
> Conflicts with Copyright Office Regulations**

Moreover, nothing in the regulations promulgated under the Copyright Act allows for the manner of anonymous registration employed here. The regulations at 37 C.F.R. § 202.3(b)(4) ("Registration as a single work") permit registration of a single work to extend to self-contained works included in a single unit of publication only where the copyright claimant is the same. This provision does not provide for registration where the names of individual contributors and their works are not included in the registration application, nor does it provide for listing only three random contributors. *Id.* Indeed, 37 C.F.R. § 202.3(b)(3) ("Continuation Sheets") contemplates the listing of additional relevant information including "titles of independent works in which copyright is being claimed and which appear . . . within a collection of works," as well as authors, as indicated by Ms. Petruzzelli in her letter (Ex. X at 2) (referring to the internal office manual preference that all authors be listed on continuation sheets). Nor does the regulation itself under which Alaska Stock appears to have registered, 37 C.F.R. § 202.3(b)(5) ("Group registration of related works: Automated databases"), provide for the registration of the database to apply to individual works contained within the database.

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al                                                    Case No. 3:09-cv-00061-TMB
Page 13 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 13 of 17

The lack of any rule allowing for a single mass registration of works by numerous authors under three random names is also demonstrated by the fact that Ms. Petruzzelli in her February 12, 2002, letter could not cite a single regulation authorizing this procedure. Instead, she pointed to a Circular (*see* Ex. Z) that covers serial publications—which do not resemble in the least the compilations of convenience at issue here—and a provision in the *Compendium II*, a twenty-five year old internal manual. (Ex. X at 2.) Such internal agency guidelines and manuals have no legal force. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (SSA manual did not carry legal force); *see also Kugel v. United States*, 947 F.2d 1504, 1507 (D.C. Cir. 1991) ("[I]ntra-office manuals, unlike official regulations, have no legal force.").

In sum, nothing in the Copyright Office regulations support the interpretation of copyright registration procedures that Alaska Stock will presumably rely on.

### E. Properly Developed And Implemented Rules For The Registration Of Large Numbers Of Photographs Already Exist

With the passage of the 1976 Act, Congress explicitly granted the Copyright Office authority to establish procedures for the group registration of copyrights by the same author. *See* 17 U.S.C. § 408.

> The provision empowering the Register to allow a number of related works to be registered together as a group represents a needed and important liberalization of the law now in effect. At present the requirement for separate registrations where related works or parts of a work are published separately has created administrative problems and has resulted in unnecessary burdens and expenses on authors and other copyright owners. In a number of cases the technical necessity for separate applications and fees has caused copyright owners to forego copyright altogether. Examples of cases where these undesirable and unnecessary results could be avoided by allowing a single registration include . . . *a group of photographs by one photographer* . . . .

H.R. Rep. No. 94-1476, at 154, 1976 U.S.C.C.A.N. 5659, 5770 (emphasis added).

The Copyright Office acted on this mandate and, after a proper notice and comment period, it issued formal rules to govern the registration of multiple works by the same author

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al   Case No. 3:09-cv-00061-TMB
Page 14 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 14 of 17

under a single registration. *See* 43 Fed. Reg. 965, 966-67 (January 5, 1978) (later codified as 37 C.F.R. § 202.3). In 2001, the Copyright Office, following an additional notice and comment period, announced a further liberalization of the group registration procedures, and in particular the deposit requirements, specifically for collections of published or unpublished photographs *by a single photographer*. *See generally* Group Registration of Photographs, 66 Fed. Reg. 37142, 37142–50 (July 17, 2001) (later codified at 37 C.F.R. § 202.20(c)(2)(xx)). Specifically, the Copyright Office concluded pursuant to this lengthy notice and comment proceeding that (1) group registrations of photographs should be limited to photographs taken by the same individual author (*id.* at 37148) and noted that such is supported by subsections 408(c)(2) and (3) of the Copyright Act and the legislative history; and (2) that the deposit required to accompany the registration application should include a copy of each photograph and date of publication and that the photocopies must "clearly depic[t] the photograph" (*id.* at 37146–47).

The industry practice at issue here is therefore not only an unauthorized evasion of the statutory registration requirements listed in 17 U.S.C. § 409, but it is also an evasion of the clear rules promulgated by the Copyright Office specifically for *photographers* pursuant to the properly developed process that Congress explicitly authorized. That process preserves the statutory requirement that a registration include the names of the claimant, the authors, and the titles of the works in question, while addressing the registration fee issue. Rather than rely on a convoluted, impermissible work-around centered on hollow transfers of copyright "solely for the purpose of copyright registration," photographers can simply register their works under their own names, and at minimal cost to them (the Copyright Office currently charges $45 for a single group registration of up to 750 photographs (Ex. AA)). That is what should have occurred here. If the photographers who purportedly transferred their copyrights to Alaska Stock do indeed own

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al                                Case No. 3:09-cv-00061-TMB
Page 15 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 15 of 17

copyrights in works that they believe HMH has infringed, then they are still free to properly register those images (at minimal expense) and pursue their claims. Until they do so, however, Alaska Stock's claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss all 52 claims based on unregistered copyrights pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, Defendants request that the Court stay this lawsuit until proper registrations are obtained and Alaska Stock files an amended complaint that alleges facially valid registrations.

Dated: May 26, 2009 

Respectfully submitted,

/s/ J. Russell Jackson
J. Russell Jackson
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036 – 6522
Phone: (212) 735-3000
Fax: (212) 735-2000
russel.jackson@skadden.com

Jason R. Braswell
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
Phone: (312) 407-0700
Fax: (312) 407-0701
jason.braswell@skadden.com

Daniel C. Kent
BIRCH, HORTON, BITTNER
AND CHEROT
1127 West Seventh Avenue
Anchorage, AK 99501
Phone: (907) 276-1550
Fax: (907) 276-3680
dkent@bhb.com
ABA # 0111067
Attorneys for Defendants

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al                    Case No. 3:09-cv-00061-TMB
Page 16 of 17
Case 3:09-cv-00061-HRH   Document 24   Filed 05/26/09   Page 16 of 17

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 26th day of May, 2009, a true and correct copy of the foregoing document was served via ECF on the following parties:

Brent Cole
Marston & Cole, P.C.
821 N. Street, Suite 208
Anchorage, Alaska 99501
cole@pobox.alaska.net

Christopher Seidman
Harmon & Seidman LLC
P.O. Box 3207
Grand Junction, CO 81502
chrisseidman@qwestoffice.net

Craig Wallace
Harmon & Seidman LLC
P.O. Box 3207
Grand Junction, CO 81502
craigwallace@qwestoffice.net

BIRCH, HORTON, BITTNER AND CHEROT


By: _/s/ Daniel C. Kent_
    Daniel C. Kent

DEFENDANT'S MOTION AND MEMO TO DISMISS CLAIMS
Alaska Stock v. Houghton Mifflin Harcourt et al     Case No. 3:09-cv-00061-TMB
Page 17 of 17
Case 3:09-cv-00061-HRH    Document 24    Filed 05/26/09    Page 17 of 17