Brent Cole
Marston & Cole, P.C.
821 N Street, Suite 208
Anchorage, Alaska 99501
Tel: (907) 277-8001
Fax: (907) 277-8002
Email: cole@pobox.alaska.net

Christopher Seidman, Admitted pro hac vice
Craig F. Wallace, Admitted pro hac vice
Harmon & Seidman LLC
101 S. Third Street, Suite 265
Grand Junction , CO 81501
Tel: (970) 245-9075
Fax: (970) 245-8086
Email: chrisseidman@qwestoffice.net
       craigwallace@qwestoffice.net

*Attorneys for Plaintiff Alaska Stock, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

| | | |
|---|---|---|
| ALASKA STOCK, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Hon. Timothy M. Burgess |
| | ) | |
| v. | ) | 3:09-CV-00061-TMB |
| | ) | |
| HOUGHTON MIFFLIN HARCOURT | ) | |
| PUBLISHING COMPANY and | ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

---

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

---

### PRELIMINARY STATEMENT

This is an action for copyright infringement under 17 U.S.C. § 101 et seq. (the

"Copyright Act" or the "Act"), brought by Alaska Stock, LLC ("Alaska Stock" or "Plaintiff") against defendant publisher Houghton Mifflin Harcourt Publishing Company ("HMH") and defendant printer R.R. Donnelley & Sons Company ("Donnelley") (collectively "Defendants"). Plaintiff's allegations are set forth in the Complaint filed on March 26, 2009 (Court File No. 1, "Complaint").  On May 26, 2009, pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants filed a Motion to Dismiss the Complaint for lack of subject matter jurisdiction (Court File Nos. 24-25).  Plaintiff opposes the Motion to Dismiss on all grounds.

## STATEMENT OF FACTS

Alaska Stock, LLC is an Alaska limited liability company that licenses photographs on behalf of a number of professional photographers.  Alaska Stock is the owner and exclusive copyright holder of original works of photography, as detailed on Exhibit A to the Complaint ("the Images").  Each of the Images is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights as specified on Exhibit A to the Complaint.[1]

HMH[2] is a publisher that sells and distributes textbooks throughout the United States, including Alaska, including through its former companies or divisions Houghton Mifflin Company, Houghton Mifflin Publishing, McDougal Littell, Harcourt Brace & Company, and Harcourt School Publishers, including certain textbooks in which Plaintiff's images are unlawfully reproduced.  R.R. Donnelley is the world's premier full-service printer.

Beginning in April 1995 and continuing through September 2007, HMH requested, and

---

[1] As detailed below, Alaska Stock is voluntarily dismissing its claims as to five of the Images because of deficiencies in the registration process.

[2] In December 2007, Houghton Mifflin Company acquired several divisions of another education publisher and renamed the merged company Houghton Mifflin Harcourt Publishing Company. Houghton Mifflin Harcourt Publishing Company is the successor in interest to Harcourt School Division, Houghton Mifflin Company, Houghton Mifflin College Division, Holt Rinehart & Winston, McDougal Littell, and Harcourt Archive.

Alaska Stock sold, limited licenses to copy and print the Images in a number of different publications, with the number of permissible copies expressly delineated for each publication (Complaint ¶ 11). At the time HMH made the requests, it knew its actual use would greatly exceed the copy limit in its requests but, despite this knowledge, HMH deliberately misrepresented the number it needed. (*id*. ¶ 13). Alaska Stock was induced to grant Houghton licenses to copy and distribute the Images at the prices charged because of HMH's misrepresentation that it was seeking permissions for expressly limited use (*id*. ¶ 12).

HMH caused far more than the licensed number of copies of the publications to be printed, displayed, distributed and sold, each containing copies of one or more of the Images (*id*. ¶ 11). Donnelley printed all copies of the publications in suit (*id*. ¶ 18).

## STANDARD OF REVIEW

Subject matter jurisdiction in this court exists if the case arises under the Constitution, laws, or treaties of the United States—a federal question.[3] The party seeking to invoke the jurisdiction of the Court has the burden of establishing that jurisdiction exists.[4] In evaluating a complaint pursuant to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court must presume all factual allegations to be true and draw all reasonable inferences in favor of the nonmoving party.[5] However, the court may consider extrinsic evidence in a Rule 12(b)(1) motion to dismiss, such as "affidavits or any other evidence properly before the court . . . . It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in

---

[3] 28 U.S.C. § 1331.
[4] *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).
[5] *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB
3
Case 3:09-cv-00061-HRH   Document 30   Filed 06/24/09   Page 3 of 25

fact, possesses subject matter jurisdiction."[6]

## ARGUMENT

Defendants raise a single challenge in their Motion to Dismiss, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, that this Court lacks subject matter jurisdiction over 52 of the Images involved in the controversy.[7] Because Plaintiff's copyrights were validly registered with the United States Copyright Office ("Copyright Office"), Defendants' motion should be denied.

To succeed on its copyright infringement claims, Plaintiff must show: "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work."[8] Under 17 U.S.C. § 411(a), "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." Thus, if Defendants prove the Copyright Office registrations are not valid, under current Ninth Circuit law the Court would not possess subject matter jurisdiction over this action for copyright infringement.[9] Plaintiff has the burden to demonstrate subject matter jurisdiction, to the extent of the challenge raised by such evidence.[10] The Ninth Circuit in *Augustine v. United States*[11] articulated the procedural approach required to evaluate the Defendants'

---

[6] *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).
[7] Defendants do not challenge copyright registrations for other photographs that did list the photographer in the registration application, *see* Court File No. 24 at 2-3.
[8] *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).
[9] *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir.1998); *Corbis Corp., v. Amazon. com, Inc.*, 351 F. Supp. 2d 1090, 1112 (W.D.Wash. 2004). The United States Supreme Court recently granted certiorari to decide whether "17 U.S.C. §411(a) restrict[s] the subject matter jurisdiction of the federal courts over copyright infringement actions?" *Reed Elsevier, Inc. v. Muchnik*, No. 08-103 (March 22, 2009).
[10] *See generally, Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).
[11] 704 F.2d 1074, 1077 (9th Cir. 1983) (citations omitted).

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB
4
Case 3:09-cv-00061-HRH   Document 30   Filed 06/24/09   Page 4 of 25

challenge in this case:

> In ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits. . . . . Therefore, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Unless that standard is met, the jurisdictional facts must be determined at trial by the trier of fact."

Accordingly, and within the parameters of the issue to which extrinsic evidence to the contrary has been offered, the Court should consider only undisputed facts in its determination whether an adequate registration was made in this case.

It is unclear whether Defendants' Rule 12(b)(1) motion to dismiss presents a facial or factual challenge to the Complaint.[12] In either event, the motion should be denied: First, if it is a facial challenge, it must fail because the Complaint adequately alleges subject matter jurisdiction; second, even if the motion makes a factual challenge, jurisdiction exists because Plaintiff's copyright registrations are valid. Defendants' novel premise that registration applications, filed in full compliance with Copyright Office procedures, are invalid because the author's name and work title were omitted is inconsistent with settled caselaw. The cases have universally held that registration application mistakes are not fatal unless they constitute fraud upon the Copyright Office. Since the Copyright Office was directly involved in the creation of the application process Defendants now attack, those registrations should not be invalidated, even if the process is now deemed incorrect.

---

[12] "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); see also *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). While a factual analysis may consider extrinsic evidence, facial claims are limited to the four corners of the complaint. *Id.*; *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000).

## I. Defendants' Rule 12(b)(1) Motion Fails as Facial Challenge of the Complaint.

In reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the court must take the allegations in the plaintiff's complaint as true.[13] The Federal Rules of Civil Procedure require only "a short and plain statement of the grounds for the court's jurisdiction . . ."[14] Alaska Stock's Complaint complies with that standard. It states: "Alaska Stock is the owner and holder of all copyrights to the images on Exhibit A to this Complaint ("the Images") . . . ." Each of the Images is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights as specified on Exhibit A." (Complaint, ¶ 10) (emphasis added). A thumbnail-sized copy of each Image and its copyright registration number are listed on Exhibit A to the Complaint. As the District of Arizona recently noted in denying a motion to dismiss in a parallel case involving the same Defendants and similar facts, *Bean v. McDougal Littell et al.,* Plaintiff's short and plain statement is sufficient to allege subject matter jurisdiction.[15] Plaintiff is not required to detail the facts of the registration process. Therefore, any facial challenge to this Court's subject matter jurisdiction fails and nothing more is required.

---

[13] *Wolfe*, 392 F.3d at 362.

[14] Fed. R. Civ. P. 8(a)(1).

[15] *Bean v. McDougal Littell*, 538 F. Supp. 2d 1196, 1198 (D.Ariz. 2008) ("Bean I"). The Court in ruling on the defendants' facial motion to dismiss held,

> It is true that in order for the Court to have subject matter jurisdiction over these claims, the photograph must have been properly registered with the Copyright Office. 17 U.S.C. § § 411(a), 412. However, whether the photograph was properly registered in fact is beyond the limited inquiry that a facial attack permits. Bean alleges that "[t]he copyrights in [the photograph] were registered before McDougal's improper and unauthorized use." (Compl.¶ 9.) Accepting the allegations of the Complaint as true, and drawing all reasonable inferences in favor of the plaintiff, this allegation sufficiently alleges the jurisdictional prerequisite of registration. Thus, Bean's Complaint is sufficient on its face to invoke subject matter jurisdiction.

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB

6

## II.     Plaintiff's copyright registrations in the Images-in-suit are valid, therefore this Court has jurisdiction over Plaintiff's claims as a factual matter.

If Defendants' motion to dismiss is deemed a factual challenge, it must still fail.  "If the moving party converts "the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."[16]    The uncontroverted evidence presented by both parties shows Plaintiff's registrations are valid, therefore this Court possesses subject matter jurisdiction over Plaintiff's claims.

### A.     Registration of a collective work is sufficient to convey copyright protection on each component part, provided that ownership of both rests in the same person at the time of registration.  Since Alaska Stock owned legal title to the Images at the time it registered the copyrights, its registrations are valid.

In order to defeat Defendants' motion to dismiss for lack of subject matter jurisdiction, Plaintiff must show the copyrights have been properly registered.[17]    The creators and owners of all but two of the Images transferred, in writing, their copyrights to Alaska Stock prior to the registrations (*see* <u>Exhibit 1</u> hereto, photographer agreements including assignments).[18]    Plaintiff is no longer pursuing its claims as to the two images for which no assignment could be located. [19]

---

[16] *Safe Air*, 373 F.3d at 1039.

[17] 17 U.S.C. § 411(a).  A copyright registration certificate is prima facie evidence of a valid registration if the work is registered within five years of its first publication.  *See* 17 U.S.C. § 410(c).  The Images here were not all registered within five years of their first publication, therefore Plaintiff does not claim prima facie status for the certificates; however, they may carry some evidentiary weight. *See id.* ("The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.").

[18] Plaintiff has compiled a chart showing the photographers had assigned their copyrights to each image to Alaska Stock prior to Alaska Stock's registering that image, including the relevant assignment language (*see* <u>Exhibit 2</u> hereto).

[19] Alaska Stock could not locate assignments relating to two of the Images, therefore Alaska

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB
7
Case 3:09-cv-00061-HRH   Document 30   Filed 06/24/09   Page 7 of 25

The agreements signed prior to Alaska Stock's registration of its Catalog 4 CD contained the following language assigning the copyright: ". . . I grant Alaska Stock the right to register for copyright my photographs which appear in this catalog in the name of Alaska Stock solely for the purpose of catalog registration. Alaska Stock shall reassign such copyright to me upon request." All other agreements contained the following, similar language assigning the copyright: ". . . (e) Photographer grants to Alaska Stock, solely for the purpose of image copyright registration, the copyright to any image selected by Alaska Stock. Such copyright will be reassigned to photographer upon request." Alaska Stock, as the new owner, registered the copyrights to these Images with the Copyright Office (*see* Exhibit 3 hereto, copyright registration certificates; Exhibit 4, copies of deposit copies for VA 1-066-095, and Exhibit 5 (**filed manually**), compact disc containing deposit copies for all other copyright registrations).[20]

As these assignments demonstrate, at the time the copyrights to the Images were registered, Alaska Stock was not just their claimant, but also their owner.[21] Subsequently, the

---

Stock is voluntarily dismissing its claims as to those Images, identified on lines 47 and 78 of Exhibit A to the Complaint. These images have also been identified on the assignment chart attached hereto (*see* Exhibit 2).

[20] Alaska Stock sent to the Copyright Office digital compact discs including thousands of images as the deposit copies for each of the copyrights-in-suit. Because the files are too voluminous to submit as individual exhibits, Plaintiff has compiled the contents of all but one of the deposit copy compact discs onto a single compact disc, submitted herewith as Exhibit 5 (**filed manually**). This disc is organized by copyright number and searchable by image number. The compact disc submitted with VA 1-066-095 (Alaska Stock's Catalog 4) requires a computer program in order to search for images, which does not run if copied, therefore Plaintiff has downloaded the individual images-in-suit from that disc and submitted copies of them herewith as Exhibit 4.

For all Images, where the image on the compact disc is identified by a different number than the Alaska Stock number used to identify the image in Exhibit A to the Complaint, Plaintiff has indicated the alternate image number on the chart submitted herewith (*see* Exhibit 2).

[21] *See* 37 C.F.R. § 202.3(a)(3) (2009) ("a copyright claimant is either [] the author of the work [or a] person or organization that has obtained ownership of all rights under the copyright initially belonging to the author").

photographers transferred "all copyrights and complete legal title", including "all right, title, and interest in any accrued or later accrued claims, causes of action, choses in action . . . or lawsuits, brought to enforce copyrights in the images . . ." (*see* <u>Exhibit 6</u> hereto, copyright litigation assignments). Alaska Stock, as the present owner of the copyrights-in-suit, is the proper party to bring these claims.

Registration of a collective work is sufficient to convey copyright protection on each component part, provided that ownership of both rests in the same person at the time of registration.[22] In *Bean II*, Defendants brought a similar motion to dismiss on virtually identical facts. The District of Arizona, in ruling on this factual challenge,[23] held that a similar assignment document executed by Bean and stock agency Corbis Corporation was sufficient to transfer legal title of copyrights to Corbis, thereafter permitting Corbis to properly register those rights.[24] Here, since Alaska Stock (like Corbis) owned the copyrights of the in-suit works at the time of registration, Defendants' challenge fails.

As the Court noted in *Bean II*, while "'the assignee of a previously registered statutory copyright has the burden of proving his chain of title since nothing in the registration certificate evidences his right to claim through the original copyright claimant,'" the chain of title here

---

[22] *Bean v. McDougal Littell et al.,* No. 07-8063-PCT-JAT, 2008 WL 2896950, *3 (D.Ariz., July 28, 2008) ("*Bean II*") 2008 WL 2185334 (evaluating similar database registration procedure to that used in this case); *Idearc Media Corp. v. Northwest Directories, Inc.*, Civil No. 07-796-HA, 2008 WL 2185334, *5 (D.Or. May 23, 2008); *Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 539 (4th Cir.2007); *Szabo v. Errisson,* 68 F.3d 940, 943 (5th Cir.1995); *Blue Fish Clothing, Inc. v. Kat Prints,* 1991 WL 71113 at *3 (E.D.Pa.1991).

[23] *Bean II*, 2008 WL 2896950 at *3. In *Bean II*, decided after the court denied a facial motion to dismiss in *Bean I* (*see supra*, n.16), the Court reviewed and denied the defendants' factual challenge to the court's subject matter jurisdiction.

[24] *Bean II*, 2008 WL 2896950 at *4, *6.

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB
9
Case 3:09-cv-00061-HRH   Document 30   Filed 06/24/09   Page 9 of 25

(from the photographers to Alaska Stock) is clearly evidenced by the contracts in <u>Exhibit 1</u>.[25] Defendants do not offer any evidence any other party actually owns the copyrights-in-suit. Instead, Defendants argue, citing *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.*,[26] that Plaintiff may not rely on the registration certificates because they provide no connection to the photographers.[27] There is no requirement that a plaintiff be listed on the face of a copyright registration certificate to bring a claim; otherwise any copyright owner who inherits or is the transferee of a valid copyright could not bring a claim based on a copyright he actually owns. Further, *Kenbrooke Fabrics,* does not say what Defendants claim, *i.e.*, a claimant who is not listed on a copyright registration loses the presumption that a copyright is <u>valid</u>. *Kenbrooke* simply counsels that a plaintiff "as 'the assignee of a previously registered statutory copyright has the burden of proving his chain of title since nothing in the registration certificate evidences his right to claim through the original copyright claimant.' 3 Nimmer on Copyright § 12.11[C] at 12-81-12-82 (1989 ed.)"[28] While this holding makes sense, it is immaterial to this case because Defendants have not challenged the chain of title transfers from the photographers to Alaska Stock. In *Kenbrooke* the issue was one of <u>ownership</u> of the (presumptively valid) copyright, not, as here, the <u>validity</u> of the registrations themselves. When taken together, the registration certificates and documents evidencing transfer of title from the photographers to Alaska Stock provide a factual basis for Plaintiff's ownership of those copyrights.

      **B.**    **Plaintiff's valid copyright registrations are not rendered invalid because they do not list the individual photographer as authors.**

---

[25] 2008 WL 2896950 at *5 n.7 (*quoting Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.*, 1989 WL 117704 at *5 (S.D.N.Y.1989) (*quoting* 3 Nimmer on Copyright, § 2.11(C) at 12-81-12-82 (1989)).

[26] 1989 WL 117704 at *5.

[27] *See* Court File No. 24 at 7.

[28] 1989 WL 117704 at *5.

Having failed in Arizona, Defendants raise new arguments in Alaska. Here they do not challenge the validity of the registrations on the basis that Alaska Stock was an improper registrant, as they did in *Bean*.[29] Instead, they first argue the copyright registrations issued by the Copyright Office are not valid because "[n]one of registrations for the photographs referenced in those 52 claims identify the artists who allegedly assigned their copyrights to Alaska Stock . . . as either copyright claimants or authors . . . . Section 409 of the Copyright Act mandates that all copyright registration applications include the names of the claimant and author, as well as the title. 17 U.S.C. § 409(1), (2), (6)."[30] Upon examining its files for the copyright registrations-in-suit, Plaintiff determined it misidentified the photographer for four of the Images, and the correct photographer was listed on the copyright registration application (see Exhibits 2 and 3 hereto). Plaintiff presumes Defendants will no longer challenge the registrations for these Images since they have not challenged the registrations for other Images where the photographer was listed on the application, which brings the total number of challenged registrations to 48.[31]

In any event, Defendants' argument falls short as to the remaining 48 images, because a number of courts have upheld similar collective registrations that did not include the author of a particular work.[32] Further, well-established caselaw holds that factual insufficiencies, mistakes,

---

[29] Defendants do mention this issue in a footnote in their brief, noting they did not have any evidence to support a motion to dismiss on that basis (*see* Court File No. 24 at 4, n.4). As Exhibits 1-5 hereto and the Court's ruling in *Bean II*, 2008 WL 2896950 at *4, *6, make clear, Alaska Stock was a proper party to register the copyrights to the Images, and the registrations are not invalid on that ground.

[30] Court File No. 24 at 3.

[31] These Images are noted on Exhibit 2; they are identified on lines 1, 3, 42, and 63 of Exhibit A to the Complaint.

[32] *See* discussion in Section II.B.1, *infra*.

and omissions in copyright registration applications do not render the resulting registrations invalid unless the omission or misstatement is knowing and the Copyright Office would have denied the registration if the correct information had been included on the application.[33] Importantly, Defendants do not cite a single case dismissing a claim for lack of subject matter jurisdiction because the copyright registration application did not contain the name of the author or claimant or the title of the work.

The basic premise upon which Defendants' motion is based, that registration of a copyright with the Copyright Office serves to create a public record of registrations that allows potential users or litigants to search for the creator and owner of a work[34], is flawed. First, because copyright protection is automatic,[35] many owners do not register their work until litigation is imminent. As the First Circuit noted, discussing the Copyright Act's requirement that a copy of the work be deposited with a copyright registration application, the Copyright Act does not create a notice system: "[an] objective of [the deposit requirement] might be to give would-be infringers notice of the extent of their civil liability. Yet, this can hardly have been an important legislative goal because a copyright owner is free to register any time before filing suit, even after the act of infringement."[36] Second, the Register of Copyrights is authorized to destroy the deposit copy of registered works, often the only means of identifying what work of visual art a copyright registration (which contains only the most basic identifying information)

---

[33] *See* discussion in Section II.B.2, *infra*.
[34] *See* Court File No. 24 at 5, 12.
[35] 17 U.S.C. 102.
[36] *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1162, n. 26 (1st Cir. 1994); *see also Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 485 (7th Cir. 1982) (noting "deposit regulations do not amount to disclosure requirements; nor as a practical matter can they function as such since a claimant may register any time prior to bringing suit on an infringement claim.").

actually covers.[37]  A system designed to create a public record would not authorize destruction of the identifying portion of the registration record.  In discussing a prior version of the Copyright Act (which also required a deposit of a copy of a work being registered), the Supreme Court stated,

> Sections 59 and 60 (requiring prompt deposit) were new legislation. They show clearly enough that deposit of copies is not required primarily in order to insure a complete, permanent collection of all the copyrighted works open to the public. **Deposited copies may be distributed or destroyed under the direction of the librarian and this is incompatible with the notion that copies are now required in order that the subject matter of protected works may always be available for information and to prevent unconscious infringement**.[38]

Although Defendants argue the legislative history supports their view that the list of application items in 17 U.S.C. § 409 were intended to create "an accurate public record," the portion of history Defendants cite refers only to the creation of a record for the Register of Copyrights; nowhere in the history is a **searchable, public record** mentioned.[39]

Finally, the Copyright Office's records serve as a poor catalog for anyone searching for a work of visual art who does not also know the name of the author, claimant, title, or copyright registration number of the work, because those are the only methods of searching the catalog.[40]

---

[37] 17 U.S.C. § 704(d) ("Deposits not selected by the Library [of Congress] under subsection (b), or identifying portions or reproductions of them, shall be retained under the control of the Copyright Office, including retention in Government storage facilities, for the longest period considered practicable and desirable by the Register of Copyrights and the Librarian of Congress. After that period it is within the joint discretion of the Register and the Librarian to order their destruction or other disposition . . .").

[38] *Washingtonian Publ'g Co. v. Pearson*, 306 U.S. 30, 38-39 (1939).

[39] *See* Court File No. 11 at 11 (quoting H.R. Rep. No. 94-1476 at 155-56 (1976) ("the various clauses of section 409, which specify the information to be included in an application for copyright registration, are intended to give the **Register of Copyrights** authority to elicit all of the information needed to examine the application and to make a meaningful record of registration.")(emphasis added).

[40] *See* www.copyright.gov/records; a screenshot of the search page is attached hereto as <u>Exhibit 7</u>.

The Copyright Office does not provide any method to search for the registration status or owner of an image if the only piece of information available is the image itself. Indeed, the vast number of works registered before January 1, 1978 is not even included in the online catalog; a researcher must physically search the card catalog in Washington, D.C. at the Library of Congress (either himself, or by hiring the Copyright Office staff to search on his behalf) for these works.[41] The Copyright Office's deposit files are no more easily searchable. The Copyright Office will only provide copies of a deposit in very limited circumstances, such as after written authorization is received from the copyright claimant of record in connection with litigation involving the work, or pursuant to a court order.[42] Although, like registrations, the deposit records are open to an in-person public inspection.[43] Further, as noted above, the Copyright Office does not even retain all deposits.[44]

The automatic protection granted by the Copyright Act combined with the practical limits of searching the Copyright Office's records produce a very poor "public record" of copyrighted works. Therefore, Defendants' arguments that an "accurate public record," requires perfect registration applications are unpersuasive.

> **1. The Copyright Act explicitly extends copyright registration to the constituent parts of a collective registration, and courts have held these registrations apply to individual works even where the author or title of the work is not included in the application.**

Defendants argue the registrations in this case cannot cover the photographs-in-suit because the registration applications did not include every author and title of the photographs.

---

[41] *See* United States Copyright Office Circular 23, "The Copyright Card Catalog and the Online Files of the Copyright Office," attached hereto as <u>Exhibit 8</u>.

[42] *See* United States Copyright Office Circular 6, "Access to and Copies of Copyright Records and Deposit," attached hereto as <u>Exhibit 9</u>, p. 3.

[43] 17 U.S.C. § 705.

[44] *Id*.; 17 U.S.C. § 704(d).

Defendants correctly cite the section of the Copyright Act listing the contents of an application for copyright registration, 17 U.S.C. § 409, which includes the name of the author and the title of the work. Section 409, however, must be read in conjunction with another key section of the Copyright Act, 17 U.S.C. § 103 (omitted by Defendants), that explicitly extends copyright protection to "the material contributed by the author of [a compilation]."[45] A "compilation" is defined in the Copyright Act as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term 'compilation' includes collective works."[46] The Third Circuit, in *Educational Testing Services v. Katzman*, evaluating a similar copyright registration challenge, held that, under 17 U.S.C. § 103, "the statutory premise that the copyright in a compilation extends to the constituent material contributed by the author is express . . ."[47] In other words, the Copyright Act protects not only a registered compilation itself, but also its individual components, so long as the owner is the same.[48] Several courts have held that the registration for a database or collective work extends copyright protection to the individual images contained in that database or collective work.[49] Therefore, there can be no argument that the registration for a database or collective work does not extend to its constituent parts where, as here, the owner was the same for the database or collective work and its contents.

---

[45] 17 U.S.C. § 103.

[46] 17 U.S.C. § 101.

[47] 793 F.2d 533, 539 (3d Cir. 1986); *see also Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001), *clarified on rehearing on other grounds*, 283 F.3d 502 (2d Cir. 2002) ("Under the law of this Circuit, where the owner of a copyright for a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action under § 411(a) for the constituent part.").

[48] *See Carell v. The Shubert Org., Inc.*, 104 F. Supp. 2d 236, 248 (S.D.N.Y. 1996); *Woods v. Universal City Studios, Inc.*, 920 F. Supp. 2d 62, 64 (S.D.N.Y. 1996); *Bean II*, 2008 WL 2896950 *3.

[49] *Bean II*, 2008 WL 2896950 at *3; *Corbis*, 351 F. Supp. 2d at 1114-15.

Importantly, when evaluating challenges like Defendants' motion to dismiss, courts have routinely held that the registration of a collective work will provide protection to the underlying works, **even if the author or title of the work is not included on the registration application**. The Western District of Washington has recently reviewed the same registration methods used by Corbis here without finding they violated the Copyright Act.[50]   In *Corbis Corp. v. Amazon.com, Inc.*,[51] the court reviewed Corbis's registration of a database, which was registered in a similar manner as the databases in this case.[52]   The facts were quite similar to those in this case; neither the photographer's name nor the title of the image-in-suit was included in the copyright registration application.  Rather than finding the registration was invalid because these items were not part of the application, as Defendants urge, the court found there was simply a question of fact as to whether the registration actually covered that photograph.  Importantly, the court held that a review of the deposit materials submitted with the application would answer this fact question.  Because neither party had obtained the deposit, the court held the defendant had not met its burden of proof on its motion for summary judgment on infringement.[53]   Similarly, here, Defendants produce no evidence that the photographs-in-suit are not included in the deposit materials submitted with the copyright registration application.  Plaintiff has submitted herewith as Exhibits 4 and 5 copies of the deposit materials submitted with each copyright registration application.  All but three of the challenged images-in-suit are in fact included in the deposit, and Plaintiff is no longer pursuing its claims as to the three images that are not included in any

---

[50] *Corbis*, 351 F. Supp. 2d at 1114-15.

[51] 351 F. Supp. 2d 1090, 1112 (W.D.Wash. 2004)

[52]  The Copyright Office's regulations for registration of databases are found at 37 C.F.R. § 202.3(b)(5).  One of the copyrights in this case, VA 1-066-095, was registered pursuant to the regulation for collections, which are similar to those for registering a database and are found at 37 C.F.R. § 202.3(b)(4).

[53] *Id.*

deposit.[54]

The Fifth Circuit has also held that the omission of the title of an individual work on the application for a collective work did not invalidate the copyright for that individual work.[55]  In *Szabo v. Errisson*, the facts were similar to those here.  A songwriter registered a collection of songs, but did not specifically list the title of the song-in-suit on the application.  However, the song was included on the tape of songs the registrant deposited with the Copyright Office.  While the district court held, as Defendants argue, the individual song was not covered by the collective registration, the Fifth Circuit reversed, holding, "copyright of a collection of unpublished works protects the individual works that are copyrightable, regardless of whether they are individually listed on the copyright certificate . . . . It is irrelevant to its copyright status that 'Man v. Man' was not specifically listed on the copyright registration for 'Scott Szabo's Songs of 1991.'"[56]

The court in *Szabo* relied in part on *Sylvestre v. Oswald,*[57] in which the court found the registration of a collection that did not include the song-in-suit's title nonetheless provided a valid registration of that song for jurisdictional purposes, since the song was included in the deposit copy.   The court in *Sylvestre* stated, "Given the **lenient nature of registration requirements** . . . , it is apparent that plaintiffs have established a valid registration for the song

---

[54] Plaintiff has compiled a chart to assist the Court in determining whether each image is included in the deposit materials submitted with the relevant copyright registration application (*see* Exhibit 2).  Alaska Stock determined three of the Images were inadvertently omitted from the deposit copies submitted with the registration applications, therefore Alaska Stock is voluntarily dismissing its claims as to those Images, identified on lines 4, 7 and 8 of Exhibit A to the Complaint.  These images have also been identified on the assignment chart attached hereto (Exhibit 2).

[55] *Szabo v. Errisson*, 68 F.3d 940 at 942-43 (5th Cir. 1995).  The copyrights in this case were registered under the regulation for a collection, now found at 37 C.F.R. § 202.3(b)(4)(i)(B).

[56] *Id.* at 942-943.

[57] 1993 WL 179101 *2 (S.D.N.Y. May 18, 1993).

Heaven-D."[58]   The *Szabo* court also relied in part on a Third Circuit opinion upholding the registration of individual questions in an educational test under copyright regulations that allowed the deposit of a portion of the test, but did not require each individual question to be included.[59]   The Third Circuit based its ruling in part on 17 U.S.C. § 103(b), which as noted above expressly extends copyright protection to "the material contributed by the author of [a collective] work."[60]   The court held, "the statutory premise that the copyright in a compilation extends to the constituent material contributed by the author is express . . .", therefore the fact that the individual test questions were neither listed on the copyright registration nor on permanent deposit with the Copyright Office did not affect their copyright status.[61]

It is clear after examining the caselaw applying the Copyright Act that courts have not treated the copyright registration application list in 17 U.S.C § 409 as strict requirements for a valid registration.   To the contrary, courts have found that an otherwise-valid copyright registration for a database, compilation, or collection extends copyright protection to the component works, sufficient for a plaintiff to meet the jurisdictional requirement of 17 U.S.C. § 411(a).  As Professor Nimmer has stated, rejecting the type of strict reading of the Copyright Act Defendants propose,

> Now that the Berne [Convention for the Protection of Literary and Artistic Works] era has dawned, it is to be hoped that courts will construe the myriad formalities of U.S. copyright law leniently. An approach whereby copyrights are preserved and rights to enforce remain, notwithstanding an antecedent failure to comply with the "punctilio of an honor the most sensitive" to copyright formalities, would help harmonize U.S. copyright laws with those of the rest of the Berne Union. Therefore, particularly in resolving issues of first impression as to the formalities required under the 1976 and 1909 Acts, the **courts should refrain from overtechnical**

---

[58]  *Id*. (emphasis added) (*citing* 4 Nimmer on Copyright § 17.20).
[59]  *Educ. Testing Servs.*, 793 F.2d at 538-39.
[60]  *Id*.
[61]  *Id*. at 539.

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB
18
Case 3:09-cv-00061-HRH   Document 30   Filed 06/24/09   Page 18 of 25

**constructions**.[62]

> **2.** **Omissions on copyright registration applications do not affect the validity of the copyright registration for jurisdictional purposes unless the omitted information would have caused the Copyright Office to deny the application; Defendants have established that Alaska Stock was carefully following the Copyright Office's own requirements in the application process.**

The Copyright Act and another line of cases also support the well-settled rule that a copyright application need not be perfect in order for the resulting registration to be valid. "Inaccuracies presented to Copyright Office only act as a bar to an infringement action if the inaccuracy was presented with intent to defraud and the infringing party was prejudiced by the inaccuracies."[63] This principle is codified in the Copyright Act, which states that, for the purposes of subject matter jurisdiction,

> A certificate of registration satisfies the requirements of [section 411] and section 412, regardless of whether the certificate contains any inaccurate information, unless--
>
> > (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
> > (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.[64]

Thus, the Ninth Circuit has held, "absent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement."[65] "Generally, errors or misstatements contained in an application for registration will invalidate the subject copyright

---

[62] 2 Nimmer on Copyright § 7.01, at 7-9 (1990) (Footnotes omitted) (emphasis added).

[63] *Societe Civile Succession Richard Guino v. Beseder Inc.*, 2006 WL 2917349 (D.Ariz. Oct. 6, 2006) (*citing Datastorm Tech., Inc., v. Excalibur Comm., Inc.*, 888 F. Supp. 112, 114 (N.D.Cal. 1995) (*citing Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)); *see also Three Boys*, 212 F.3d at 486.

[64] 17 U.S.C. § 411(b).

[65] *Three Boys*, 212 F.3d at 486; *see also Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).

only where the work in question would not have been eligible for copyright had the registration application contained a correct statement of the facts. . . . Such mistakes as the **erroneous identification of the author of the work**, and the failure to disclose that the work is derivative, have been found to be insufficient to invalidate a copyright."[66]  District courts within the Ninth Circuit, as well as other Circuit courts, have noted, "the Ninth Circuit's rule is particularly generous towards plaintiffs in this regard, requiring 'that a defendant . . . show that it was prejudiced by a fraudulent misstatement or omission in a registration application . . . , whereas other[ ] [courts] merely require proof that an intentional error, if discovered by the Copyright Office, would have been material to the registration decision.'"[67]

Defendants have not shown any evidence that the names of the photographers Alaska Stock omitted in its applications would have caused the Copyright Office to deny the applications had they been included.  Instead, the evidence submitted by Defendants shows just the opposite, since Alaska Stock was following the Copyright Office recommendations exactly.[68] Neither have Defendants claimed they were prejudiced by the Copyright Office's actions. Absent intentional fraud on the Copyright Office in an attempt to gain a registration where none should be granted, and resulting prejudice to the defendant, courts in the Ninth Circuit have not invalidated otherwise proper registrations.

    **C.**    **The Copyright Office has not exceeded its statutory authority by permitting database or collective registrations to protect individual works that are not listed in the application, but rather is acting in line with the Copyright Act and relevant caselaw.  Therefore the copyright registrations in this case are valid.**

---

[66] *Lanard Toys Ltd. v. Novelty Inc*., 511 F. Supp. 2d 1020, 1034 (C.D.Cal. 2007) (citing Nimmer on Copyright § 7.20[B]).
[67] *KnowledgePlex, Inc. v. Placebase, Inc*., No. C 08-4267 JF(RS), 2008 WL 5245484, *9 (N.D.Cal. Dec. 17, 2008) (*quoting Data Gen. Corp. v. Grumman Sys. Support Corp*., 36 F.3d 1147, 1161 n.24 (1st Cir. 1994)) (brackets in original).
[68] Court File No. 24 at 8-11.

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB
20
Case 3:09-cv-00061-HRH   Document 30   Filed 06/24/09   Page 20 of 25

Defendants next argue "the Copyright Office's apparent practice of allowing a registration of a collective work to cover self-contained works for which the copyright claimant is the same without requiring the claimant to list the author and title for each such embodied work conflicts with the controlling statute [17 U.S.C. § 409] requiring such information and warrants no deference."[69] Defendants cannot cite a single case that supports this broad proposition, which would invalidate hundreds of thousands, if not millions, of copyright registrations, as their argument presents an issue of first impression. To the contrary, a number of courts have upheld collective registrations even where, as here, the author or title was not included on the application itself, as detailed *supra*. These holdings are buttressed by the Copyright Act itself, which extends protection to the individual works contained in a collective registration.[70]

While Defendants spend the majority of their brief describing industry meetings with the Copyright Office and letters from Copyright Office personnel, arguing they deserve no deference, the answer to the question presented is found directly in the Copyright Act and caselaw decided under it. Defendants' argument ignores express statutory authority to promulgate regulations regarding registration of different classes of works.[71] Section 408(c)(1) states,

> The Register of Copyrights is authorized to specify by regulation the administrative classes into which works are to be placed for purposes of deposit and registration, and the nature of the copies or phonorecords to be deposited in the various classes specified. The regulations may require or permit, for particular classes, the deposit of identifying material instead of copies or phonorecords, the deposit of only one copy or phonorecord where two would normally be required, or **a single registration for a group of related works** . . . .[72]

---

[69] *Id*. at 3.
[70] 17 U.S.C. § 103; *Educ. Testing Servs.*, 793 F.2d at 538-39.
[71] 17 U.S.C. § 408(c)(1).
[72] *Id*. (emphasis added).

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB
21
Case 3:09-cv-00061-HRH   Document 30   Filed 06/24/09   Page 21 of 25

This section of the Copyright Act grants the Copyright Office authority to promulgate the database and collection regulations under which the copyrights in this case were registered.[73] Since courts have not applied the hypertechnical reading of the Copyright Act that Defendants ask the Court to adopt, Plaintiff urges this Court, in its landmark ruling, to follow the well-established policy of interpreting the Copyright Act to enable copyright holders to enforce their rights without the unduly burdensome requirements for which Defendants argue.[74]

### D. The database registration procedure Alaska Stock utilized to protect the individual works is not in conflict with Copyright Office regulations.

Defendants next argue Copyright Office regulations do not provide protection of individual works that are part of a database registration[75]; this argument also fails. Alaska Stock did not register the majority of the Images under 37 C.F.R. § 202.3(b)(4) as a single work, therefore Defendants' discussion of that section is largely inapposite.[76] Defendants do not argue Alaska Stock failed to follow the proper procedure for registering its databases under 37 C.F.R. § 202.3(b)(5), but merely state this regulation does not "provide for the registration of the database to apply to individual works contained within the database." Again, Defendants ignore the Copyright Act itself, which grants protection to individual works that are part of a collective

---

[73] *See* 37 C.F.R. § 202.3(b)(4) and (5) (database registration regulation; expressly refers to section 408(c)(1) as its authorizing statute).

[74] *See Sylvestre*, 1993 WL 179101; 2 Nimmer on Copyright § 7.01, at 7-9 (1990); *see also Matthew Bender & Co. v. West Publ'g. Co*., 240 F.3d 116, 122 (2d Cir. 2001) (citation omitted) ("The Copyright Act's principal purpose 'is to encourage the origination of creative works by attaching enforceable rights to them.'").

[75] Court File No. 24 at 14.

[76] Alaska Stock did register the Images in copyright number VA 1-066-095 under 37 C.F.R. § 202.3(b)(4) as a single work. Defendants do not point to any violation of the regulation itself in Alaska Stock's registration, they only erroneously assert the regulation should require the names of individual contributors and their works to be listed (Court File No. 24 at 13).

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB
22
Case 3:09-cv-00061-HRH   Document 30   Filed 06/24/09   Page 22 of 25

registration.[77]  A number of courts have held that registration of a collective work is sufficient to meet the jurisdictional requirements of § 411 for the individual works contained therein where (as here) the owners are the same.[78]  The regulation need not specifically state that the database registration includes the individual works when the statute and caselaw make clear this protection is provided.

Less than a year ago Defendants made similar arguments under virtually identical facts in *Bean II*.[79]  Many of Defendants' exhibits submitted with their motion were taken directly from the plaintiff's exhibits in *Bean*.  In that case, photographer Tom Bean transferred the copyright to his photograph-in-suit (and hundreds of others) to his stock photography agency, Corbis, which then submitted his, and over a hundred other photographers' images, to the Copyright Office in a single database registration.  Defendants claimed that Corbis' procedure was ineffective to register Bean's photograph and therefore required dismissal of his complaint.  Defendants' argument was rejected.  The District of Arizona ruled:

> Because Corbis held "the contractual right to claim legal title to the copyright," it was a valid claimant to the photograph for registration purposes under <u>37 C.F.R. § 202.3(a)(3)(ii)</u> n. 1 at the time of registration. **Thus, Corbis's registration of the collection of photographs containing Bean's photograph registered Bean's**

---

[77] 17 U.S.C. § 103; *Educ. Testing Serv.*, 793 F.2d at 538-39.

[78] *Idearc,*, 2008 WL 2185334 at *5; *Christopher Phelps*, 492 F.3d at 539; *Szabo,* 68 F.3d at 943; *Blue Fish,* 1991 WL 71113 at *3.

[79] 2008 WL 2896950 at *6.  The Court in rejecting Defendants' challenges noted,
> Defendants contend that the Corbis collection could not have been registered as a "single work" because it was never published as a single publication. *See* <u>37 C.F.R. § 202.3(b)(4)</u>(A)-(B). They also maintain that it could not have alternatively been registered as a "database" because the photographs in the collection were not "similar in their general content." <u>37 C.F.R. § 202.3(b)(4)</u>(C). However, Defendants cite to no *evidence* to support these accusations, and mere "accusations are not evidence." <u>Man-Seok Choe v. Torres, 525 F.3d 733, 738 (9th Cir.2008)</u> (citing <u>in re Sauvage, 819 F.Supp. 896, 902-03 (S.D.Cal.1993)</u>)." *Bean v. McDougal Littell, a division of Houghton Mifflin Publishing, and R.R. Donnelley & Sons*, 2008 WL 2896950 at *3 (D.Ariz. July 28, 2008).

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB
23
Case 3:09-cv-00061-HRH   Document 30   Filed 06/24/09   Page 23 of 25

**photograph individually.** When Corbis transferred legal title in the photograph back to Bean, it transferred title in a fully registered copyright. (emphasis added).

The Court therefore finds that Bean has met his burden of establishing subject matter jurisdiction in fact.[80]

### E. Plaintiff did not register the Images under 37 C.F.R. § 202.3(b)(10), therefore any discussion of that regulation is irrelevant to the validity of the copyrights-in-suit.

Defendants' final argument is that Plaintiff did not follow the Copyright Office's regulation for the registration of multiple published photographs by the same author. There is no dispute that Alaska Stock did not utilize the procedures set out in 37 C.F.R. § 202.3(b)(10), therefore that provision has no relevancy to whether the copyrights-in-suit are valid. The Court need not examine this section in its analysis of its subject matter jurisdiction over Plaintiff's claims.

## CONCLUSION

Plaintiff has successfully pled the facts relevant to registration to survive a facial challenge. Even if the Court deems Defendants' motion a factual challenge, they still fail because Plaintiff has submitted evidence that Plaintiff properly registered the images-in-suit in collective works that bestow protection on each component part, and both the Copyright Act and courts support a holding that omission of photographers' names on the registration application does not invalidate otherwise valid registrations. Finally, Defendants' novel arguments that the Copyright Office has exceeded its statutory authority fall flight in light of the Copyright Act itself and relevant caselaw. For all the foregoing reasons, the Court should find Plaintiff's registrations of the Images-in-suit are valid, giving the Court subject matter jurisdiction over its claims, and Defendants' Motion to Dismiss Plaintiff's Complaint should be denied.

---

[80] *Id.*

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB
24
Case 3:09-cv-00061-HRH   Document 30   Filed 06/24/09   Page 24 of 25

Dated: June 24, 2009

Plaintiff Alaska Stock, LLC by its attorneys,

/s Christopher Seidman

Christopher Seidman, Admitted pro hac vice
Craig F. Wallace, Admitted pro hac vice
Harmon & Seidman LLC
101 S. Third Street, Suite 265
Grand Junction , CO 81501
Tel: (970) 245-9075
Fax: (970) 245-8086
Email: chrisseidman@qwestoffice.net
        craigwallace@qwestoffice.net

Brent Cole
Marston & Cole, P.C.
821 N Street, Suite 208
Anchorage, Alaska 99501
Tel: (907) 277-8001
Fax: (907) 277-8002
Email: cole@pobox.alaska.net


PROOF OF SERVICE (CM/ECF)

I hereby certify that on June 24, 2009, I caused the foregoing PLAINTIFF'S MEMORANDUM
OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT to be
electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing
will be sent by operation of the court's electronic filing system to all parties indicated on the
electronic filing receipt:

Brent R. Cole     cole@pobox.alaska.net, egonzalez@marstoncole.com,
kgustafson@marstoncole.com
Christopher Seidman     chrisseidman@qwestoffice.net, jdominick@qwestoffice.net
Craig F. Wallace     craigwallace@qwestoffice.net
Daniel C. Kent     dkent@bhb.com, bmanson@bhb.com
J. Russell Jackson     russell.jackson@skadden.com
Jason R. Braswell     jason.braswell@skadden.com

/s Christopher Seidman
Christopher Seidman

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co. et al.*
3:09-CV-00061-TMB